1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

MELISSA MARIE CASTILLO,

NO.  C15-1869-RBL-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

13

Defendant.

14      Plaintiff Melissa Marie Castillo appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be AFFIRMED.

20                    I.       FACTS AND PROCEDURAL HISTORY

21      Plaintiff is a 37 year old woman with a high school education and one year of college.

22   Administrative Record ("AR") at 23, 54.  Her past work experience includes employment as a

23   part-time clothing store retail assistant and call center operator.  AR at 55, 59.  Plaintiff was

24   last gainfully employed in June 2011.  AR at 13, 77-78.

REPORT AND RECOMMENDATION - 1

On September 21, 2012, plaintiff filed an application for DIB, alleging an onset date of May 10, 2011.  AR at 11.  On June 10, 2013, she filed a claim for SSI payments.  *Id.*  Plaintiff asserts that she is disabled due to rapid cycling bipolar disorder, post-traumatic stress disorder, panic disorder, cutting, and situational agoraphobia.  AR at 102.  Plaintiff also reported visual and auditory hallucinations.  AR at 801.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 11.  Plaintiff requested a hearing which took place on April 17, 2014.  *Id.*  On June 27, 2014, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 24.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On December 2, 2015, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Castillo bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On June 27, 2014, the ALJ issued a decision finding the following:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2.   The claimant has not engaged in substantial gainful activity since May 10, 2011, the alleged onset date.

3.   The claimant has the following severe impairments: affective disorder, anxiety disorder, and personality disorder.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has sufficient concentration to understand, remember and carry out simple, repetitive tasks.  The claimant can concentrate in two- hour increments for simple, repetitive task work with usual and customary breaks throughout an eight-hour workday.  She can work superficially and occasionally with the general public.  The claimant can work in the same room with an unlimited number of coworkers, but should not work in coordination with them.  She can interact superficially with coworkers.  The claimant can interact occasionally with supervisors and with this restriction is likely to accept criticism from supervisors and respond appropriately.  With these restrictions, she is likely to maintain attendance and punctuality in the workplace.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1978 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2011, through the date of this decision.

AR at 13-24.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in assessing the severity of plaintiff's impairments at step two;

2. Whether the ALJ erred in evaluating plaintiff's credibility;

3. Whether the ALJ erred in weighing medical and other opinions in the record;

4. Whether the ALJ erred by assigning limited weight to the other source testimony; and

5. Whether the ALJ erred at step five by posing an incomplete hypothetical.

Dkt. 11 at 1; Dkt. 14 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   The ALJ Did Not Err at Step Two.

An impairment will be found severe only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Society Security Act; to be "disabling," the impairment must be so limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  42 U.S.C.A § 423(d)(1)(A).  Plaintiff has the burden of proving she had a severe impairment, or combination of impairments, which lasted or was expected to last for a period of twelve months.  *Id.*

Plaintiff argues that the ALJ erred at step two by failing to include Ms. Castillo's migraines, ankle injuries, and obesity as severe impairments. Dkt. 11 at 12.  Plaintiff claims that the migraines and the history of ankle injuries, singly or in combination, significantly limit her ability to perform basic work activities.  *Id.*  Plaintiff cites the medical evidence establishing that she has migraine headaches and a history of ankle injuries, which consists of records of treatment by neurologist Arielle Davis, M.D., neurologist Stephanie Carapetian, M.D., and orthopedic surgeon James Swenson, M.D.  *See* AR at 713—723, 706-712.  Plaintiff provides no explanation to support the claim of severity, merely asserting that "there is no doubt" that these impairments, "when properly evaluated," meet the standard for severe impairments. Dkt. 11 at 12.  Plaintiff contends that the ALJ's failure to consider these impairments, as well as plaintiff's obesity, resulted in an erroneous residual functioning capacity ("RFC").  *Id.*

The Commissioner responds that the ALJ reasonably assessed the severity of plaintiff's impairments at step two when the ALJ found that plaintiff's severe impairments did not

include her ankle injuries, migraine headaches, or obesity. Dkt. 14 at 2. The Commissioner

maintains that the ALJ correctly found that plaintiff did not establish any limitations from her

ankle impairment that lasted or were expected to last at least twelve consecutive months. *Id*. at

3; *see* AR at 14. Plaintiff merely identified a three-month period in 2013 and 2014 where she

experienced ankle pain. Dkt. 14 at 3; *see* AR at 602-07, 706-12. The Commissioner argues

that the evidence also supports the ALJ's conclusion that plaintiff's migraines are amenable to

treatment and not a severe impairment. *Id*. The Commissioner quotes plaintiff's statement that

she was "usually able to continue with her activities" despite the headaches, AR at 721, as well

as plaintiff's admission that treatment had made her headaches "markedly better" to the point

that she sometimes did not realize when she had a headache, AR at 688. The Commissioner

further contends that the ALJ correctly concluded that plaintiff's obesity caused no work-

related issues because plaintiff did not allege any physical limitations or that obesity limited

her ability to work. Dkt. 14 at 2 (citing AR at 235).

The ALJ found that plaintiff had the following severe impairments: affective disorder,

anxiety disorder, and personality disorder. AR at 13. The ALJ considered the fact that

plaintiff had suffered ankle pain from October of 2013 to January of 2014, when she

underwent surgery on her right ankle. *Id*. The ALJ found that the evidence did not establish

that the post-surgery status of the right ankle "has or will limit the claimant's functioning for

12 consecutive months," and therefore concluded that it was not a severe impairment. *Id*. The

ALJ also found that plaintiff's migraines did not constitute a severe impairment on the basis of

the limited mention of migraines in the medical records, the fact that the claimant only recently

began receiving treatment for this condition, and the improvement she experienced since that

time. AR at 15. The ALJ noted that plaintiff had not alleged that obesity limited her ability to

work. AR at 14. Nor had plaintiff indicated on the function report that her conditions limited

1   her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, or walk three miles.

2   *Id.*

3          The Court agrees with the Commissioner that plaintiff failed to show that her ankle

4   pain constituted a severe impairment which lasted or was expected to last for a period of

5   twelve months.  On January 6, 2014, plaintiff saw Dr. Swenson about the right ankle pain that

6   she had experienced since spraining her ankle the previous year.  AR at 706-707, 709.

7   Imaging revealed an osteochondral lesion on the medial talus.  AR at 606, 707.  Plaintiff had

8   surgery on her right ankle on January 31, 2014.  AR at 709-712.  At the hearing in April 2014,

9   plaintiff stated: "Currently, I am taking hydrocodone for my recent ankle injury.  It isn't

10  something I do long term."  AR at 72.  Plaintiff has not established that her ankle pain rose to

11  the level of an impairment that lasted or was expected to last for a period of twelve months.

12  Moreover, although Dr. Swenson opined that plaintiff "has had multiple ankle injuries through

13  her life," AR at 709, plaintiff did not allege either in her disability report or at the hearing that

14  her ankle pain limited her ability to work, AR at 210, 72.  Thus, the ALJ reasonably excluded

15  ankle pain from the list of plaintiff's severe impairments.

16          The record also supports the ALJ's finding that plaintiff's migraines do not constitute a

17  severe impairment.  Plaintiff did not mention migraines as a limiting condition in her disability

18  report.  AR at 210.  As the ALJ noted, plaintiff did not allege that migraines limited her ability

19  to work "even though this condition has reportedly existed for years."  AR at 14.  On June 24,

20  2013, plaintiff saw a neurologist complaining of headaches, and was put on nortriptyline and

21  prochlorperazine.  AR at 719.  At her follow-up appointment on September 20, 2013, plaintiff

22  indicated that her headaches had been "markedly better" since starting nortiptyline and that the

23  severity had decreased to the point that "it actually takes her 'a little while to realize she has a

24  headache.'"  AR at 716.  Plaintiff testified that she experiences breakthrough migraines five to

six times per year, which cause her to stay in bed for about a day, AR at 81, but reported that the prochlorperazine helps to alleviate the headaches, AR at 716. Thus, the medical evidence supports the ALJ's conclusion that plaintiff's migraines are amenable to treatment and did not significantly limit her ability to do basic work activities. AR at 15.

Similarly, plaintiff did not allege during her hearing that her obesity limited her ability to work. Plaintiff indicated in her function report that her weight did not affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, or complete tasks. AR at 235. As the ALJ noted, the record does not show that plaintiff's obesity significantly contributed to her psychiatric complaints. AR at 14.

For these reasons, plaintiff has not shown error in the ALJ's failure to include ankle pain, migraines, and obesity among plaintiff's severe impairments at step two. The ALJ's step two findings are supported by substantial evidence in the record as a whole.

>B.   The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

>>1.   Standard for Evaluating Credibility

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because it is unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The fact that a claimant stopped work for reasons other than her impairments may be a sufficient basis to disregard her testimony.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

> 2.    *The ALJ Provided Legally Sufficient Reasons for Finding Plaintiff Less Than Fully Credible.*

The ALJ acknowledged that there were underlying medically determinable impairments that could reasonably be expected to cause plaintiff's symptoms, but found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  AR at 18.  Specifically, the ALJ found that (1) plaintiff has made inconsistent statements that undermine her credibility, (2) plaintiff's accounts concerning her drug use undermine her credibility, (3) plaintiff's daily activities are inconsistent with the severity of symptoms alleged, and (4) plaintiff's jobs ended due to reasons other than her impairments.

> *(a) Inconsistent Statements*

1    The ALJ found that plaintiff's statements concerning her incapacity were contradicted

2 by her own reports to medical providers.  AR at 20.  The ALJ concluded that contrary to

3 plaintiff's statements that symptoms such as panic attacks and depression had prevented her

4 from working since May 2011, "treatment records from 2011 show she was doing pretty well."

5 AR at 20.  The ALJ highlighted evidence in the record showing that plaintiff frequently

6 reported her mood was good in 2011 and 2012.  The ALJ noted that on March 4, 2013,

7 plaintiff reported to her primary care provider that she was feeling "more stable overall than

8 she has over the past year."  AR at 529.  The ALJ observed that this statement was at odds with

9 what plaintiff was reporting to her psychiatrist around that time.  On March 18, 2013, plaintiff

10 told psychiatrist Dr. Roff that she had been feeling suicidal with intense urges to cut since

11 March 4, the day she reported feeling stable.  AR at 574.  The ALJ also discussed plaintiff's

12 contradictory statements about her hallucinations and her depression.  AR at 19, 20.

13    In addition, the ALJ found inconsistencies in plaintiff's testimony concerning an

14 allegedly traumatic domestic violence incident.  AR at 19.  Plaintiff testified at the hearing that

15 her boyfriend tried to kill her during an altercation in 2012, AR at 52, but the ALJ found that

16 when plaintiff described this incident in 2012 she made no mention of him trying to kill her.

17 AR at 414.  The ALJ noted that plaintiff's 2012 statement that she felt physically safe at her

18 mother's house is at odds with her claim that the domestic violence incident caused her to

19 experience paranoia, visual hallucinations, and fears that her ex-boyfriend would break into her

20 mother's house.  AR at 414.

21    Plaintiff argues that the ALJ improperly focused on "alleged minor inconsistencies" in

22 evaluating plaintiff's credibility.  Dkt. 11 at 14.  The Court disagrees.  Plaintiff's inconsistent

23 statements are a clear and convincing reason to find her less than fully credible.  As discussed

24 above, in assessing the claimant's credibility, the ALJ may use ordinary techniques of

REPORT AND RECOMMENDATION - 12

credibility evaluation, such as considering any inconsistent statements in the claimant's testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ reasonably found that plaintiff's March 4, 2013 statement to her primary care doctor that she was feeling "more stable overall than she has over the past year" was inconsistent with what she was reporting to her psychiatrist at that time. AR at 529. The diary entries plaintiff wrote for her psychiatrist indicated that strong urges to cut and panic attacks occurred between February 28, 2013 and March 18, 2013. AR at 574. On March 18, the psychiatrist noted that plaintiff's urges to cut had been "more disturbing than usual" and that "suicidal thoughts and urges to cut have been consistently strong since 3/4." *Id*. On October 22, 2013, plaintiff told her psychotropic medication prescriber that she was experiencing symptoms including anxiety, depression, fearfulness, and hopelessness. AR at 670. However, when plaintiff was screened for depression by a different ARNP that same day, she reported that she had not felt depressed or hopeless during the past two weeks. AR at 668. On March 13, 2014, plaintiff reported that she had experienced auditory and visual hallucinations for over five years. AR at 801. However, plaintiff denied experiencing any psychotic symptoms when she sought treatment at psychiatric emergency services in mid-2011. AR at 316.

Finally, the ALJ found that the record contains limited objective support for the severity of the alleged symptoms, noting that no treatment provider of record witnessed a panic attack, observed symptoms of sleeplessness, or commented that plaintiff appeared to be responding to internal stimuli. AR at 19. "Whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record," including the individual's own statements about the symptoms. *Bell-Shier v. Astrue*, 312 Fed.

App'x 45, 49 (9th Cir. 2009) (citing Social Security Ruling No. 96-7p).  Plaintiff's numerous

inconsistent statements were a clear and convincing reason for the ALJ to find plaintiff less

than fully credible.

### (b) Marijuana Use

The ALJ found that plaintiff's inconsistent accounts concerning her marijuana use

undermined her credibility.  AR at 21.  Plaintiff testified that she stopped smoking marijuana in

October 2013 because she learned it could cause her symptoms to worsen.  AR at 68.

However, the ALJ noted that on January 23, 2014, plaintiff reported she was seeking Social

Security disability benefits and since "they may want me to do pee test at the court, I shouldn't

smoke MJ until then."  AR at 691.  Plaintiff testified that she called her medication prescriber

to correct her chart to reflect that she had stopped smoking marijuana because she was

"particular about details" and wanted them to be accurate.  AR at 68.  The ALJ concluded that

"the claimant's efforts to document that she had stopped smoking marijuana was clearly an

attempt to generate evidence in support of her disability claim and shows she was concerned

about what appeared in her treatment records and how this would affect the success of her

claim."  AR at 21.

The ALJ reasonably concluded that plaintiff's inconsistent accounts concerning her

marijuana use undermined her credibility.  AR at 21.  Inconsistent statements regarding drug

use are a clear and convincing reason to discount a claimant's credibility.  *Thomas v. Barnhart*,

278 F.3d 947, 959 (9th Cir. 2002) (upholding adverse credibility determination where claimant

had "present[ed] conflicting information about her drug and alcohol use").

### (c) Daily Activities

The ALJ found that plaintiff's activities during the relevant period were inconsistent

with the severity of symptoms alleged.  AR at 20.  For example, a March 2012 psychiatry

report indicates that plaintiff was volunteering at her niece's school.  AR at 458.  The ALJ

noted that this volunteering activity was inconsistent with plaintiff's reports of difficulty being

around crowds.  AR at 20.  Plaintiff testified at the hearing that she was attending two exercise

classes at the YMCA: a core training class with about six participants and a Zumba class with

ten to twelve participants.  AR at 91.  The ALJ found that plaintiff's "ability to go to parties, a

festival, volunteer at her niece's school, and go to exercise classes is at odds with her

allegations regarding panic attacks and isolating."  AR at 21.

Plaintiff argues that the ALJ erred by discrediting plaintiff's testimony on the basis that

plaintiff's activities of daily living were not consistent with the level of impairment claimed.

Dkt. 11 at 14 (citing *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("ALJs must be

especially cautious in concluding that daily activities are inconsistent with testimony about

pain, because impairments that would unquestionably preclude work and all the pressures of a

workplace environment will often be consistent with doing more than merely resting in bed all

day.")).  The Court disagrees.  The ALJ's adverse credibility finding is supported by numerous

examples of activities that were at odds with plaintiff's alleged fear of people, fear of crowds,

agoraphobia, panic attacks, and avoidance of social activities.  On June 7, 2011, plaintiff

reported having had a good time over the weekend when she went fishing with her family.  AR

at 360.  Psychiatry records from June 2012 show that plaintiff pursued dog care, house-sitting,

and yard work jobs to earn some money.  AR at 432; AR at 436.  A report dated October 1,

2012 shows that plaintiff went on a camping trip with friends and "enjoyed herself."  AR at

396.  On November 5, 2012, plaintiff reported feeling tired after staying up late for a

Halloween party, where she "enjoyed the attention she got at the party."  AR at 387.  The ALJ

reasonably took into account evidence of plaintiff's participation in social activities throughout

2013, including attending a Solstice Festival.  *See* AR at 577; AR at 583; AR at 641; AR at 657; AR at 659.

The ALJ reasonably concluded that inconsistencies between plaintiff's testimony and her daily activities undermined her credibility.  *See Light*, 119 F.3d at 792.  "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted).

*(d) Employment History*

The ALJ found that plaintiff's previous jobs ended due to reasons other than her impairments.  AR at 19.  The ALJ noted that plaintiff quit her retail job because she was having problems with the new manager, not because of panic attacks, the stress of interacting with people, or obsessive-compulsive anxiety about her workstation.  AR at 19.  Plaintiff testified that one reason she was unable to work was that she felt "insulted by people who don't hold up their end of work where I have to end up picking up the slack," commenting that she has "absolutely no filter when it comes to me feeling insulted."  AR at 90.  The ALJ notes that on December 3, 2012, plaintiff stated "I know I'm capable of doing the work, I just have a problem with the environment" and added, "it's always the person who slacks the most who gets on my nerves."  AR at 599.  The ALJ concluded that "[n]ot wanting to work with people who do not do [sic] put forth their best effort is certainly understandable, but does not provide a legitimate basis for seeking disability benefits."  AR at 19.

The ALJ reasonably discounted plaintiff's credibility on the ground that her jobs ended for reasons other than her impairments.  Plaintiff testified that she quit her job at the retail clothing store in 2011 because there was a change in the store manager and plaintiff felt she was the focus of the new manager's hostility.  AR at 56.  Plaintiff stated that she got along with her coworkers and the previous manager.  AR at 56.  Plaintiff was fired from her job at the call center because she became angry with a coworker and used profanity after dealing with a difficult customer.  AR at 58.  The fact that a claimant stopped working for reasons other than her impairments is a clear and convincing reason to discount her testimony regarding the intensity, persistence and limiting effects of her symptoms.  *Hensley v. Colvin*, 600 Fed. App'x 526, 527 (9th Cir. 2015) (citing *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (stating that in making a credibility determination, ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured)).

Accordingly, the ALJ did not err in evaluating plaintiff's credibility.  The ALJ provided several clear and convincing reasons for discounting the claimant's testimony, identifying what testimony was not credible and what evidence undermined her complaints.  These reasons are supported by substantial evidence in the record.

C.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence.

Plaintiff challenges the ALJ's assessment of opinions rendered by treating psychiatrist Sarah Roff, examining physician Paul Anthony Zarkowski, and examining mental health counselor Charles James Larsen-Kalla.  The Court will address each opinion in turn.

*1.    Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

1    747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

2    physician's opinion, however, is not necessarily conclusive as to either a physical condition or

3    the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

4    *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

5    physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

6    contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick*, 157 F.3d

7    at 725.  "This can be done by setting out a detailed and thorough summary of the facts and

8    conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.*

9    (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her

10   conclusions.  "He must set forth his own interpretations and explain why they, rather than the

11   doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

12   Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at

13   725.

14          The opinions of examining physicians are to be given more weight than non-examining

15   physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

16   uncontradicted opinions of examining physicians may not be rejected without clear and

17   convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

18   physician only by providing specific and legitimate reasons that are supported by the record.

19   *Bayliss,* 427 F.3d at 1216.

20          Opinions from non-examining medical sources are to be given less weight than treating

21   or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

22   opinions from such sources and may not simply ignore them.  In other words, an ALJ must

23   evaluate the opinion of a non-examining source and explain the weight given to it.  Social

24   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

REPORT AND RECOMMENDATION - 18

1   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

2   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

3   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

4   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

5              2.      *Sarah Roff, MD*

6       Psychiatrist Dr. Sarah Roff began treating plaintiff in August 2012.  AR at 414.[3]  The

7   record reflects that Dr. Roff prescribed medications for plaintiff and met with plaintiff several

8   times per month from August 2012 to June 2013.  AR at 387-419; AR at 559-601; AR at 724-

9   733.  On January 29, 2013, Dr. Roff opined the following in an addendum to one of the

10  treatment notes:

> Melissa continues to report constant urges to cut, nightmares, panic attacks, and
> OCD symptoms as well as frequent ongoing psychogenic somatic symptoms
> (N/V, migraines).  She clearly has functional impairment in multiple areas,
> including both social and occupational.  She has been unable to maintain
> employment for the past several years due to interpersonal issues that will likely
> be remediable with DBT [dialectical behavior therapy].

14  AR at 588.

15      The ALJ assigned no weight to this opinion.  AR at 22.  The ALJ stated that the

16  claimant's ability to work is an administrative finding reserved to the Commissioner.  *Id*.  The

17  ALJ also provided two other reasons to support her decision:  first, "Dr. Roff did not specify

18  what the interpersonal issues were or explain how they prevented the claimant from working,"

19  and second, "the claimant's activities and social life during the relevant period do not support a

20  conclusion that interpersonal issues prevent her from doing all work."  *Id*.

---

[3] Plaintiff reports that Dr. Roff and plaintiff had a treatment relationship beginning in
May 2011.  Dkt. 11 at 7.  However, there is no evidence in the record before the Court to
support this date.  On August 13, 2012, Dr. Roff reported that plaintiff was referred to her by
another doctor and that she was "meeting with her for the first time today."  AR at 414.

REPORT AND RECOMMENDATION - 19

1    Plaintiff contends that the ALJ erred in assigning no weight to Dr. Roff's January 29,

2    2013 opinion.  Dkt. 11 at 7.  Plaintiff argues that Dr. Roff's opinion should have been entitled

3    to controlling weight, because it was not contradicted.  *Id*. at 8.  Plaintiff points out that Dr.

4    Roff's opinions were based upon the objective evidence of mental status examinations (MSEs)

5    that she performed over the course of a two-year treatment relationship with plaintiff.  *Id*. at 7-

6    8.  Alternatively, plaintiff argues that the ALJ erred by failing to provide specific and

7    legitimate reasons for rejecting Dr. Roff's opinion.  *Id*. at 8-9.

8    The Commissioner responds that the ALJ reasonably rejected Dr. Roff's opinion.  Dkt.

9    14 at 7.  The Commissioner argues that only medical opinions can be entitled to controlling

10   weight, and Dr. Roff's statement is an opinion on an issue reserved to the Commissioner.  *Id*.

11   (citing 20 C.F.R. § 404.1527).  Furthermore, even if Dr. Roff's assessment were a medical

12   opinion, the Commissioner argues that the ALJ reasonably rejected it because the ALJ

13   provided specific and legitimate reasons that were supported by substantial evidence.  Dkt. 14

14   at 7 (citing *Bayliss*, 427 F.3d at 1216).  The Commissioner contends that the ALJ's finding that

15   Dr. Roff's opinion was inconsistent with plaintiff's daily activities was a reasonable basis to

16   reject Dr. Roff's opinions.  Dkt. 14 at 8.  The Commissioner notes that plaintiff does not even

17   suggest that her activities were consistent with Dr. Roff's assessment and thus fails to provide

18   a basis for reversal of the ALJ's decision on that ground.  *Id*.

19   Opinions on some issues are not medical opinions, but rather "opinions on issues

20   reserved to the Commissioner because they are administrative findings that are dispositive of a

21   case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §

22   404.1527(d).  A statement by a medical source that a claimant is "disabled" or "unable to

23   work" falls into this category.  20 C.F.R. § 404.1527(d)(1).  Consistency with the rest of the

24

record is a proper factor to consider when evaluating what weight to give a medical opinion. 20 C.F.R. § 404.1527(c)(4), 416.927(c)(4).

The Court finds that Dr. Roff's statement regarding plaintiff's inability to maintain employment was an opinion on an issue reserved to the Commissioner, rather than a medical opinion, and that the ALJ properly provided specific and legitimate reasons for rejecting the other aspects of Dr. Roff's medical opinion. Dr. Roff's January 29, 2013 addendum was a brief and conclusory opinion. AR at 588. The ALJ reasonably found that Dr. Roff failed to "specify what the interpersonal issues were or explain how they prevented the claimant from working." AR at 22. Although Dr. Roff's detailed treating notes provide support for her opinion that plaintiff has social and occupational functional impairment due to interpersonal issues, it is not the role of the ALJ to guess at Dr. Roff's meaning based upon her treatment notes. *See Kelly v. Astrue*, 471 Fed. App'x 674, 676 (9th Cir. 2012) ("Even though Dr. Schorzman was Kelly's primary care physician from August 2005 until July 2006, there was no error in the ALJ's failure to mention Dr. Schorzman's treatment notes because they do not contain any medical opinions that are significant or probative with respect to the residual functional capacity determination."). Moreover, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Dr. Roff did not provide any explanation regarding plaintiff's interpersonal issues, or how they would impact her in a workplace setting.

The ALJ's finding that plaintiff's "activities and social life during the relevant period do not support a conclusion that interpersonal issues prevent her from doing all work" also constituted a specific and legitimate reason to reject Dr. Roff's opinion. *See Dubois v. Colvin*, 2016 WL 1638040, at *1 (9th Cir. Apr. 26, 2016) (holding that the ALJ did not err in rejecting

a treating physician's medical opinion based on inconsistency with the claimant's activities); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions). As discussed above, plaintiff participated in numerous social activities, such as volunteering at her niece's school and going to parties, a festival, and group fitness classes. The ALJ could reasonably conclude these activities showed some ability to remain calm in the presence of others and get along with others.

Thus, to the extent that Dr. Roff's addendum was a medical opinion, the ALJ provided specific and legitimate reasons for rejecting it, supported by substantial evidence.

*3.    Paul Anthony Zarkowski, MD; Charles James Larsen-Kalla, LMHC*

On May 4, 2011, plaintiff was admitted to Psychiatric Emergency Services at Harborview Medical Center, where Dr. Zarkowski assessed a GAF score of 35.[4] AR at 317. On May 6, 2011, Mr. Larsen-Kalla of Harborview Mental Health Services instructed plaintiff to fill out an intake questionnaire, and checked a box indicating that plaintiff had a GAF score lower than 50. AR at 346-47.

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* at 32. A GAF score of 31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

The ALJ assigned limited weight to the GAF ratings provided by Dr. Zarkowski and Mr. Larsen-Kalla.[5]  The ALJ did so on the grounds that GAF ratings "are not function-by-function assessments and do not define any particular functional limitation or ability."  AR at 21.  The ALJ assigned little weight to Dr. Zarkowski's opinion on the basis that he did not provide a function-by-function assessment and the examination findings did not appear to support such a low GAF rating.  AR at 21.  The ALJ noted that plaintiff denied any psychotic symptoms or suicidal ideation and was "calmly reading a book" when Dr. Zarkowski first entered the room.  AR at 21; *see* AR at 317.  Mr. Larsen-Kalla did not provide an opinion regarding plaintiff's functioning, and therefore the ALJ did not specifically address Mr. Larsen-Kalla's treatment notes.

Plaintiff acknowledges that a GAF score is not dispositive of disability, but contends that the ALJ erred in rejecting the GAF scores provided by Dr. Zarkowski and Mr. Larsen-Kalla.  Dkt. 11 at 9, 11.  Plaintiff argues that "the fact that Ms. Castillo's GAF scores were consistently within the serious to major impairment range when determined by various medical professionals is highly probative of her inability to maintain regular, continuous employment."  *Id*. at 11-12.

The Commissioner responds that a GAF score represents a clinician's subjective judgment about an individual's overall level of functioning.  Dkt. 14 at 8 (citing AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  The Commissioner argues that clinicians assess Axis V GAF ratings by considering factors not relevant to an ALJ's analysis, such as the death of a family member,

---

[5] The ALJ assigned limited weight to all of the GAF scores in the record, including Dr. Roff's assigned GAF score of 39.  AR at 588.  Because the ALJ rejected Dr. Roff's opinion for several other specific and legitimate reasons, as discussed above, the ALJ did not err by also rejecting Dr. Roff's GAF score.

1   divorce, and living alone.  Dkt. 14 at 8.  The Commissioner notes that the American

2   Psychiatric Association has discontinued the use of GAF scores in the latest edition of the

3   DSM because of its "conceptual lack of clarity" and "questionable psychometrics in routine

4   practice."  *Id*. (citing *DSM* 16-17 (5th ed. 2013)).  Specifically, the Commissioner argues that

5   the ALJ provided "a valid reason for assigning little weight to the GAF scores" when she

6   stated that GAF scores do not define any particular functional limitation or ability.  *Id*. at 9.

7   The Commissioner is correct. The GAF Scale provides a measure for an individual's

8   overall level of psychological, social, and occupational functioning.  AMERICAN PSYCHIATRIC

9   ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).

10  The Scale "may be particularly useful in tracking the clinical progress of individuals in global

11  terms, using a single measure."  *Id.* at 30.  A GAF score of 31–40 indicates "some impairment

12  in reality testing and communication" or "major impairment in several areas, such as work or

13  school, family relations, judgment, thinking or mood."  *Id.*  at 32.

14  Despite its usefulness as a tool for psychological assessment, however, a GAF score is

15  not determinative of mental disability or limitation for social security purposes.  *See*

16  *McFarland v. Astrue*, 288 Fed. App'x 357, 359 (9th Cir. 2008) (citing 65 Fed. Reg. 50746,

17  50764–50765) (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the

18  severity requirements in our mental disorders listings.").  In evaluating the severity of a

19  claimant's mental impairments, a GAF score may help guide an ALJ's determination, but an

20  ALJ is not bound to consider it.  *See McFarland,* 288 Fed. App'x at 359 (ALJ did not commit

21  error by failing to mention the plaintiff's three GAF scores of 50); *Orellana v. Astrue,* No.

22  1:06-cv-1166 OWW TAG, 2008 WL 398834, at *9 (E.D. Cal. Feb.12, 2008) ("While a GAF

23  score may help the ALJ assess a claimant's ability to work, it is not essential and the ALJ's

24  failure to rely on the GAF does not constitute an improper application of the law.").

The ALJ provided specific and legitimate reasons to justify the rejection of Dr. Zarkowski's opinion.  The ALJ was not required to discuss Mr. Larsen-Kalla's treatment notes, as he did not provide a medical opinion and simply checked a box on an intake checklist estimating plaintiff's GAF score to be lower than 50.  Accordingly, the ALJ did not err by failing to assign these GAF scores any weight.

### D.   The ALJ Did Not Err in Evaluating the Other Source Testimony.

In order to determine whether a claimant has an impairment, an ALJ may consider the testimony of "other sources" such as nurse practitioners, therapists, and counselors, as well as "non-medical" sources, such as family members.  20 C.F.R. § 404.1513(d).  Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and cannot be disregarded without comment.  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).  If an ALJ wishes to discount the testimony of a lay witness, he must provide "reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  Identifying inconsistencies between such statements and the record as a whole is generally sufficient.  *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).  In this case, the ALJ assigned limited weight to the testimony of two other sources: (1) mental health counselor Jampa Khamshitsang, and (2) plaintiff's mother, Kathryn Castillo.

### 1.   *Jampa Khamshitsang, MA, MPH*

Ms. Khamshitsang saw plaintiff several times at Sea Mar Community Health Center Mental Health Services in January and February 2014.  AR at 738-746.  On March 20, 2014, Ms. Khamshitsang completed a Mental Medical Source Statement.  AR at 747-750.  Ms. Khamshitsang opined that plaintiff suffered from (1) a severe limitation in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of

REPORT AND RECOMMENDATION - 25

rest periods, (2) marked limitations in various aspects of social interaction, the ability to work with others, and adaptation abilities, and (3) moderate limitations in sustained concentration and persistence.  AR at 747-749.  Ms. Khamshitsang also opined: "Client is unable to work due to her depressive symptoms which seems to be worsening even though client is on psychotropic medication."  AR at 749-750.

The ALJ assigned little weight to the moderate, marked and severe functional limitations opined by Ms. Khamshitsang because they appeared "to be largely based on the claimant's less than fully credible self-report."  AR at 22-23.  Because the ALJ found that plaintiff was exaggerating symptoms when seen by mental healthcare providers at Sea Mar, the ALJ reasoned that Ms. Khamshitsang's failure to provide evidence of these limitations beyond a mere recitation of plaintiff's subjective complaints justified giving little weight to her opinion.  AR at 23.  The ALJ noted that Ms. Khamshitsang based her opinion, in part, on posttraumatic stress disorder symptoms ("PTSD"), yet no acceptable medical source appears to have diagnosed plaintiff with this condition.  *Id*.  Additionally, the ALJ found that Ms. Khamshitsang's Mental Medical Source Statement was inconsistent with plaintiff's "actual functioning as evidenced by her social life and daily activities."  *Id*.

Plaintiff contends that the ALJ erred in speculating that Ms. Khamshitsang's opinion simply relied on Ms. Castillo's subjective self-reports.  Dkt. 11 at 11.  Plaintiff states that Ms. Khamshitsang repeatedly saw plaintiff from late 2013 to early 2014 and therefore had "a considerable amount of time to understand and opine on claimant's impairment severity and functional limitations."  *Id*.

The Commissioner responds that the ALJ's decision to reject Ms. Khamshitsang's opinion was based on a specific and legitimate reason.  Dkt. 14 at 9.  The Commissioner argues that an ALJ may reject a medical opinion because it appears to be "based to a large extent on a

claimant's self-reports that have been properly discounted as credible." *Id.* (citing *Tommasetti*, 533 F.3d at 1041 (9th Cir. 2008) (internal quotations omitted)).  The Commissioner also points out that plaintiff makes no attempt to rebut the ALJ's finding that Ms. Khamshitsang's assessment was inconsistent with plaintiff's actual social functioning. *Id.* at 10.

The ALJ reasonably concluded that Ms. Khamshitsang's Mental Medical Source Statement was largely based on plaintiff's self-report.  Ms. Khamshitsang wrote in her mental functional capacity assessment that plaintiff had been the victim of domestic violence, when in fact plaintiff, and not her boyfriend, was arrested in connection with the altercation.  AR at 750; *see* AR at 350; AR at 414.  Ms. Khamshitsang also wrote that plaintiff suffered from PTSD, although there is no evidence in the record to show that plaintiff was ever diagnosed with this disorder.  AR at 749.  Such statements support the ALJ's conclusion that Ms. Khamshitsang relied on plaintiff's self-report.  Ms. Khamshitsang's notes from early 2014 meetings with plaintiff largely reflect plaintiff's statements about her feelings and recent actions. *See*, *e.g.*, AR at 738; AR at 742.

A medical opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)) (internal quotations omitted).  As plaintiff was found to be less than fully credible, the ALJ's finding that Ms. Khamshitsang's opinion was largely based on plaintiff's subjective reports was a specific and germane reason to reject her opinion.

### 2.    *Kathryn Castillo*

The ALJ attached little weight to the lay witness testimony of plaintiff's mother, Kathryn Castillo.  AR at 23.  In her function report dated November 26, 2012, Kathryn Castillo

1   reported that the claimant slept "all day" when depressed.  AR at 223.  The ALJ found this

2   statement inconsistent with the record, which did not include evidence that plaintiff

3   complained of sleeping all day.  AR at 23.  Plaintiff's mother also reported the claimant was

4   laid off or fired from "every job" because of problems getting along with other people.  AR at

5   228.  However, the ALJ noted that plaintiff testified that she quit her retail job in 2011 and lost

6   her job at the AAA call center due to attendance issues.  AR at 23; *see* AR at 56, 60.

7          Plaintiff contends that the ALJ improperly evaluated Kathryn Castillo's statement and

8   should have given the Third Party Function Report more weight.  Dkt. 11 at 15.  Plaintiff

9   points out that much of the function report was consistent with evidence in the record, notably

10  Kathryn Castillo's description of plaintiff's symptoms.  *Id*.  Plaintiff argues that that the "two

11  minor inconsistencies" noted by the ALJ "do not invalidate the function report."  *Id*. at 16.

12  Plaintiff highlights the fact that plaintiff's mother was in a position to objectively observe her

13  daily functioning.  *Id*.

14         The Commissioner responds that the ALJ reasonably weighed the lay statement from

15  Kathryn Castillo because the ALJ contrasted Kathryn Castillo's report with the medical

16  evidence and rejected her report on the basis of inconsistency.  Dkt. 14 at 10.  The

17  Commissioner argues that the two inconsistencies found by the ALJ constituted substantial

18  evidence in support of the ALJ's decision to reject Kathryn's Castillo's report and cannot be

19  passed off as "minor."  Dkt. 14 at 11.

20         The Court agrees with plaintiff that the alleged inconsistency concerning plaintiff's

21  sleeping patterns was not a valid reason to discount Kathryn Castillo's testimony.  *See* AR at

22  223.  Plaintiff testified that her migraine medication caused her to sleep during the days when

23  she experienced severe pain: "I have about 15 minutes to get into bed, and then I am out for

24  about four hours."  AR at 81.  Additionally, plaintiff testified that she regularly experienced

1   trouble sleeping at night, on which occasions she would "take a nap during the middle of the

2   day." AR at 84-85. She added: "I tend to be more comfortable sleeping during the daylight

3   hours." AR at 85. Kathryn Castillo's statement that plaintiff spent all day or virtually all day

4   sleeping on some occasions is neither implausible nor inconsistent with the record. Thus, this

5   is not a valid basis on which to reject Kathryn Castillo's testimony.

6          However, the Court agrees with the Commissioner that Kathryn Castillo's statement

7   about why plaintiff's jobs ended is sufficiently inconsistent with the record to constitute a

8   "germane" reason to discount her credibility. Kathryn Castillo stated that plaintiff was laid off

9   or fired from "every job" because of problems getting along with other people. AR at 228.

10  However, plaintiff quit her retail job in 2011 because when there was a change in the store

11  manager, "the environment became very hostile" and plaintiff "was the focus of her hostility."

12  AR at 56. Plaintiff testified that she got along fine with the previous store manager. *Id.*

13  Plaintiff was fired from her job at the AAA call center because of attendance issues. AR at 60.

14         Thus, the ALJ reasonably rejected the testimony of Ms. Khamshitsang and Kathryn

15  Castillo for specific and germane reasons.

16         E.      The ALJ Did Not Err at Step Five by Posing an Incomplete Hypothetical.

17         Finally, plaintiff contends that the ALJ's hypothetical question to the vocational expert

18  was deficient because it failed to fully reflect the opinions of the doctors and other sources

19  discussed above. Dkt. 11 at 16. Plaintiff argues that the ALJ neglected to include all of

20  plaintiff's limitations in the hypothetical. *Id.*

21         Plaintiff's remaining assignment of error is essentially a restatement of her previous

22  arguments regarding the medical evidence in this case. Because the Court has affirmed the

23  findings of the ALJ as to plaintiff's prior assignments of error, it must also conclude that there

24  was no error in determining plaintiff's RFC or relying upon that RFC in formulating the

REPORT AND RECOMMENDATION - 29

hypothetical at step five.  Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints which were rejected by the ALJ, establishing the additional limitations that he believes should have been included in the RFC assessment and hypothetical.  Accordingly, the ALJ did not err by omitting these additional limitations from the hypothetical question posed to the vocational expert at step five.  *See Carmickle*, 533 F.3d at 1164–65 (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work related impairments).

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **August 11, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 12, 2016**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 28th day of July, 2016.

James P. Donohue
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 30